Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the deputy commissioner as
STIPULATIONS
By their "Pre-trial Agreement" filed November 1, 1994, the parties agreed that the employer/employee relationship existed on February 18, (sic) 1994, that the parties were subject to the N.C. Workers' Compensation Act, and that on said date the plaintiff earned an average weekly wage of $136.50, yielding a compensation rate of $91.00. All stipulations contained in the aforementioned Pre-Trial Agreement are incorporated herein by reference including the stipulation regarding medical records and Industrial Commission Forms contained in Paragraph 13 of said Agreement. Furthermore, the parties stipulated that on or about February 19, 1994, plaintiff's average weekly wage was $136.50.
**********
Based upon the competent evidence of record, the Full Commission makes the following additional
FINDINGS OF FACT
1. Plaintiff is a thirty-seven year old married female, mother of three, who went through the eighth grade in school and later obtained a GED certificate. Plaintiff worked for Anvil, Inc., a sewing plant, as a sewer prior to beginning work with defendant-employer in November 1993 as a night crew stocker, a job which entailed putting up freight, lifting boxes, checking product dates, and stocking and straightening shelves.
2. Plaintiff began working for the K-Mart Store in Whiteville, North Carolina in December 1993. During her shift on February 19, 1993, while walking through a wet area on defendant-employer's premises, plaintiff slipped on the wet floor and landed on her left arm and buttocks. After her injury, plaintiff informed Margaret Soles, a co-worker, that evening, that she was all right and indicated that she was not experiencing any problems. Plaintiff continued to work and finished her shift without further incident or complaints and did not seek medical treatment. Later that morning when the supervisor and other employees arrived at defendant-employer's store, Ms. Soles relayed to the others what had happened; and when questioned about the incident, plaintiff again stated that she was all right, did not need to seek medical attention and did not feel that it was necessary to file an accident report.
3. Plaintiff continued to work as a night crew stocker with defendant-employer through the end of February, March and April 1994, a position which required plaintiff to engage into a significant amount of physical activity including lifting with both upper extremities without requesting medical treatment or requesting that an accident report be completed.
4. In late April 1994, plaintiff and her husband were putting up a fence in her back yard at home; and on April 30, 1994, while using post-hole diggers in her back yard, plaintiff experienced an onset of severe pain in her left arm. On the following Monday, May 2, 1994, plaintiff sought medical treatment for the first time since February 19, 1994, seeing John A. Webster, D.C., of the Webster Chiropractic Clinic in Whiteville, North Carolina. As the Webster Clinic notes indicate, two days following the post-hole digging incident, plaintiff described her problem as left shoulder and arm pain. Plaintiff returned to seek chiropractic treatment on May 3, 4, 6, 9, 10, and 13, 1994.
5. Plaintiff was also seen on May 11, 1994, at the Riegelwood Medical Clinic where a medical note indicates that plaintiff related the onset of neck, left shoulder and arm pain beginning two weeks previously while digging post holes.
6. Dr. Webster referred plaintiff on May 14, 1994, for an MRI of the cervical spine area. This test revealed a herniated disc at the C5-6 level; and plaintiff was then referred to Dr. Bachman, a neurologist, who first saw plaintiff on May 18, 1994. Again, plaintiff related a history of the onset of left neck, shoulder and arm pain of three to four weeks duration, attributable to digging post holes. Dr. Bachman concurred with the C5-6 disc herniation diagnosis and referred plaintiff to Dr. Melin, a neurosurgeon. Dr. Melin first saw plaintiff on June 1, 1994 and following his examination and review of the MRI scan, recommended that plaintiff undergo an diskectomy and fusion at the C5-6 level which plaintiff underwent on July 7, 1994.
7. As of September 7, 1994, plaintiff was released to return to light duty employment; and it was anticipated that she would resume her normal duties within three to four weeks thereafter. As of September 7, 1994, plaintiff had reached maximum medical improvement with a ten percent permanent partial disability to her back.
8. Prior to February 19, 1994, plaintiff had been treated off and on by Dr. Webster since July 1989 when she was involved in an automobile accident. The stipulated records of Webster Chiropractic Clinic revealed that plaintiff had prior complaints of neck pain or stiffness as well as left shoulder pain. In a letter to plaintiff's employer at that time, it was noted that plaintiff was complaining of, among other things, neck pain and stiffness, pain in her left shoulder, low back pain and backache and that she had received traumatic injuries of the cervical thoracic and lumbar spines. Plaintiff received conservative treatment at Webster Chiropractic Clinic in from July 1989 through December 1990 and also returned to Dr. Webster on several occasions in May of 1993 regarding complaints of neck and shoulder pain. The records of May 6, 1993, reflect that plaintiff was experiencing left arm and shoulder pain as well as neck pain and neck stiffness and left and right hip and lower back pain. In addition to seeing plaintiff on May 6, 1993, Dr. Webster also treated and examined plaintiff on May 7, 10, and 17, 1993. As reflected by said records, on these visits the notes reflect that most of plaintiff's pain was in the C5-C6 area.
9. Despite plaintiff's pre-existing history of neck and left shoulder pain for which she had received treatment from Dr. Webster in 1989, 1990 and 1993, following the fall of February 19, 1994, plaintiff did not return to see Dr. Webster for medical treatment and remained capable of performing her regular work duties for defendant-employer which required a significant amount of physical activity. It was not until after plaintiff was using the post hole diggers in April 1994 that plaintiff noticed the onset of severe pain which prevented her from engaging in her regular work duties for defendant-employer and which necessitated plaintiff returning to see Dr. Webster for chiropractic treatment.
10. The credible medical evidence of record fails to attribute plaintiff's back condition to the injury by accident she sustained during the course of her employment with defendant-employer on February 19, 1994. While Dr. Melin and Dr. Webster have, at times, attributed plaintiff's condition to the fall occurring on February 19, 1994, a thorough reading of their depositions revealed that neither Dr. Melin nor Dr. Webster were able to attribute plaintiff's cervical condition which necessitated surgery to her fall on February 19, 1994, as opposed to a pre-existing back condition, or the incident when plaintiff was using post hole diggers in April 1994, or plaintiff's fall in late April 1994.
***********
The foregoing stipulations and findings of fact engender the following
CONCLUSIONS OF LAW
Plaintiff has not proven that the back condition for which she first sought medical treatment on May 2, 1994, which ultimately necessitated surgery, arose out of and in the course of her employment with defendant-employer. N.C. GEN. STAT. § 97-2(6).
*********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following
ORDER
1. Plaintiff's claim for workers' compensation is hereby DENIED.
2. Defendant shall pay an expert witness fee in the amount of $90.00 to John A. Webster, D.C.
3. Each side shall pay its own costs.
 S/ ________________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ ________________________ LAURA K. MAVRETIC COMMISSIONER
S/ ________________________ BERNADINE S. BALLANCE COMMISSIONER
JRW:md